**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **Chant Engineering Co., Inc.** | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 06-282C** |
| | ) | |
| | ) | |
| **The United States** | ) | |
| | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S STATEMENT OF FACTS**

Pursuant to RCFC 56.1, Plaintiff Chant Engineering Co., Inc. ("Plaintiff" or "Chant") herewith submits this Statement Of Facts in support of its Motion For Judgment On The Administrative Record.

1. On February 7, 2005 officials of the U.S. Department of the Army, Corpus Christi Army Depot ("CCAD") executed a Justification and Approval ("J&A") for the procurement, by "Other Then Full And Open Competition" of three (3) General Purpose Test Stands ("Test Stand[s]"). AR 18 – AR21.[1]

2. The J&A authorized CCAD to negotiate the purchase of the Test Stands with Dayton T. Brown, Inc. ("DTBI") as:

> the only source that has the technical knowledge and proprietary engineering data to provide test systems that will provide utilization of current support equipment and will provide standardization for all test systems in the hydraulic test area.

AR 18.

[1] "AR ____" refers to the Administrative Record filed by Defendant.

3. Among the signers of the J&A was Grover C. Carrow, III, Mechanical Engineering Technical (sic) ("Carrow"). AR 21.

4. The J&A was approved by the CCAD Competition Advocate on March 14, 2005. AR 22.

5. Subsequently, on April 8, 2005, CCAD issued Solicitation W912NW-05-T-0063 ("the Solicitation") for the three (3) Test Systems. AR 26 – AR 55.

6. The Solicitation was issued as a Request For Quotations ("RFQ") and stated (on page 3) that the Test Systems were to be manufactured, "in accordance with Specification herein. Purchase Request Number A35A00-4268-5044" (hereinafter, "the Specification") (a full copy of the Specification was included in the Solicitation as pages 22-31) See AR 46 – AR 55.[2]

7. On page 5, the Solicitation included the clause at Federal Acquisition Regulation ("FAR") 52.212-2 Evaluation – Commercial Items (Jan 1999) (see 48 CFR § 52.212-2); that clause states, in pertinent part, as follows:

> (a) <u>The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered.</u> The following factors shall be used to evaluate offers:
>
> Evaluation factors are (i) <u>technical capability of the item offered to meet the Government's requirements</u>; (ii) past performance; and (iii) price. Technical and past performance, when combined, are significantly more important than cost or price. Information for past performance needed is model number, contract number, POC and POC's phone number.
>
> * * * *

AR 29 (emphasis supplied).

[2] The copy of the Solicitation included in the administrative Record is missing page 3. However, it can be formed in the proposal of DTBI (AR 332) and that of Chant (AR 177).

8. Nowhere in the Solicitation was there any suggestion that the procurement was a "sole source" procurement designating a particular DTBI part number or item; indeed the Specification, included as part of the Solicitation (AR 46 – AR 55), provided detailed performance criteria. AR 26 – AR 55

9. The Solicitation stated that there would be a site visit for potential offerors on April 21. See AR 177 and AR 332.

10. Following site visit, CCAD issued Amendment 0001 to the Solicitation; Amendment 0001 included Minutes of the Site Visit, as well as various technical questions raised before and during the Site Visit, and the answers thereto; Amendment 0001 also changed the due date for quotes to May 19.

11. Following receipt of Amendment 0001. Chant sent additional technical questions to CCAD via e-mail. AR 166 – AR 167.

12. CCAD responded to Chant's May 9 and May 10 e-mails via Amendment 0002, dated May 13, 2005. AR 170 – AR 171.

13. Chant submitted a technical proposal in response to the Solicitation, outlining how its offered Hydraulic Test Systems would comply with CCAD's requirements; the technical proposal also provided information on Chant's technical qualifications and past performance. AR 175 – AR 248.

14. Chant's price quote was $844,072.00. AR 177 – AR 178.

15. DTBI also submitted a proposal; its total offered price was $1,450,000.00 ($605,928 higher than Chant's offered price). AR 328 – AR 411.[3]

---

[3] There was a third offeror, but it did not protest the decision to exclude its proposal. See AR 286 through AR 291.

16. A technical evaluation of Chant's proposal was performed by Carrow; of SEVENTY-EIGHT (78) Specification requirements, Carrow concluded that Chant's proposal was non-compliant measured against a total of FIVE (5) requirements: C2.4, C3.1, C4.3.1.1, C5.1.2 and C13.2. AR 281 through AR 285.

17. The FIVE requirements cited in Carrow's analysis were as follows:

> C2.4 Provide complete compatibility with existing CCAD general purpose text fixtures, automated text procedures and with existing local area test system network.
>
> C3.1 Contractor's responsibilities include but are not limited to identification of interface requirements, design of control methodology, purchase and assembly of new components, programming of any DAC, computer, installation of new components, delivery and installation of test system / power supply, installation of new wiring / piping, hook-ups to interfaces, and start-up of new systems, that when operational, does not exceed 85 db's at the operators work station. In addition, contractor shall train CCAD personnel on operation and maintenance of the equipment provided.
>
> C4.3.1.1 Pressure. The test system shall be equipped to obtain pressure readings in the following locations and ranges:

| Gauge/Transducer Accuracy | Range | System |
|---|---|---|
| Circuit Supply No. 1 | 0-6,000 psig | 0.28% FS |
| Circuit Supply No. 1 | 0-5,000 psig | 0.28% FS |
| Circuit Supply No. 2 | 0-6,000 psig | 0.28% FS |
| Circuit Supply No. 2 | 0-5,000 psig | 0.28% FS |
| Circuit Supply No. 3 | 0-6,000 psig | 0.28% FS |
| Circuit Supply No. 3 | 0-5,000 psig | 0.28% FS |

| Gauge/Transducer Accuracy | Range | System |
|---|---|---|
| Static Proof Pressure | 0-10,000 psig | 0.50% FS |

> Reference gages shall be provided with each transducer above and shall have equivalent ranges for each transducer location. Each gage shall pressure stubbing and pressure limiting protection. Location of the pressure transducers shall be within 40 inches of the supply and return porting listing above.

> C5.1.2 Semi-automated Test Procedure. A semi-automated test procedure to perform the testing for the Cyclic or Directional Actuator per DMWR's 55-1680-385 & 55-1680-356 shall be provided with the test system.
>
> C13.2 All purchased hardware shall be normally stocked, standard off the shelf packages shown in a current published catalog. One of a kind, prototype or discontinued models are not.

AR 46 – 47, 48, 51 and 54.

18. Relative to the FIVE (5) requirements, Carrow's technical analysis concluded:

> C2.4 Need to state how they are going to comply with this. Existing equipment it must note with, ARP's ect. (sic), are proprietary. Stated on page 2 [of the Chant proposal] they would have a site visit after award for the purpose of examing compatibility.
>
> C3.1 Section 2.1 (page 3) [of the Chant Proposal Describes (sic) manual controls for supply/return pressure and static test pressure. Is Chant aware the ATP for OH-58 actuators requires the test system to control all pressures and flow?
>
> C4.3.1.1 No circuit return pressure identified.
>
> C5.1.2 How is the delivery of the semi-automated test procedure going to be performed. SOW states that it must be compatible with existing software, ect. (sic).
>
> C13.2 Not addressed [in the Chant proposed]

AR 281, 282 and 284.

19. The analysis of Chant's proposal concluded as fellows:

> Section 4 of Chants proposal "Response to Specification," is the CCAD statement of work removing "Contractor" with Chant." Even doing this, Chant is not 100% compliant with the statement of work. <u>Following is a list of specific questions in regards to the deficiencies</u>:
>
> 1) <u>The statement of work is asking for an "off the shelf" Hydraulic Test System</u>. Chant proposal states the need for a post award site visit to discuss compatibility and design issues and are offering CCAD a test system with serial number 0001. Is Chant offering an off the shelf proven design?
>
> 2) Statement of work paragraph C2.4: Chant failed to state how

they are going to comply with compatibility issues. Stated on page 2 of their proposal they "will visit the site after award for the purpose of examining compatibility issues," a sign they do not fully understand the project. Existing equipment it must be compatible with, ATP's ect.[sic], are proprietary. How is Chant going to address theses issues?

3) Statement of work paragraph C3.1: Section 2.1 of proposal (page 3) describes manual controls for supply/return pressure and static test pressure. Is Chant aware the ATP for OH-58 actuators requires the test system to control all pressures & flows?

4) Statement of work paragraph C3.1: No circuit return pressure identified.

5) Statement of work paragraph C5.1.2: How is the delivery of the semi-automated test procedure going to be performed? SOW states that it must be compatible with existing software, ect.

6) Statement of work paragraph C13.2: Is all hardware going to be normally stocked, standard off the shelf packages?

7) Entire statement of work: Utilizing existing software and support equipment is an important factor for CCAD. This software and support equipment, i.e. PDDS, calibration cart, ATP's connecting to existing hydraulic power supply, ect, contain propriety information. Has does Chant plan to address this issue?

AR 285 (emphasis supplied).

20. Carrow's analysis of DTBI's proposal concluded as follows:

[DTBI] proposal meets the statement of work 100%. The General Purpose Hydraulic Test Stands & Hydraulic Power supplies are proven off the shelf technology with established NSN's [National Stock Number] CCAD presently has four of these General Purpose Test Hydraulic Test Stands & three Hydraulic Power supplies. No additional cost would be accrued (sic) if this proposal is awarded the contract.

AR 280

21. In his "Overall Evaluation Of Proposals," Carrow wrote:

Dayton T. Brown had the only proposal that met the statement off work 100% and offered "off the shelf" proven test systems and hydraulic power supplies. The equipment offered in their proposal

has established PCN's and is used throughout the Government and private industry. CCAD presently has four of the proposed general purpose test systems and three of the proposed hydraulic power supplies. Purchasing the systems from DTB would have no immediate cost expenditures for CCAD:

Service contract to help maintain test systems: one in place
Spare parts: $200k on hand already, no more required
Project development design station (PDDS): CCAD has a $200k design station to support proposed equipment.

Purchasing the systems from DTB would allow standardization and not require a learning curve for test systems operators, calibration technicians, and maintenance teams. During the learning curve of new test equipment, an average efficiency rate of 70% for one year is estimated for test system operators, and an average efficiency rate of 70% is estimated for calibration technicians and maintenance teams for two years. An increase of operation expeditors for CCAD.

Both Chant and PSI are offering test systems that have not been designed yet. Although both have hydraulic equipment design backgrounds, neither has produced general purpose test systems before. Neither company expressed how they were going to interface with and be compatible with existing software, fixtures, hydraulic power supply, calibration cart, or project development design station. Both companies expressed the need to have a post award site visit to discuss compatibility and design issues.

* * * *

AR 291.

22. On August 29, 2005, Chant was advised by CCAD that the contract arising from the Solicitation was awarded to DTBI, *i.e.*, the original intended sole-source awardee, at the price of $1,450,000.00. AR 415.

23. Following a debriefing Chant filed an agency-level protest (see FAR 33.103) on September 19. AR 418 – AR 423.

24. Chant's agency-level protest was referred to Carrow for review of the technical issues raised. AR 437 – AR 439.

25. Carrow's analysis of the Chant agency-level protest was based on the assumption that the procurement had been a sole-source negotiation with DTBI. See AR 439 ("It was determined that a sole source would be in the best interest of CCAD to utilize current support equipment and TPS.")

26. On November 17, 2005 CCAD denied Chant's agency-level protest. AR 446 – AR 447.

27. Chant then filed a protest action in the Court of Federal Claims (No. 05-1243C).

28. After the action was filed, CCAD proposed a new evaluation of Chant's technical proposal, by an "evaluation team." AR 465 – AR 464

29. Based on CCAD's decision to reevaluate its proposal rendering its protest action moot, Chant dismissed the action pursuant to Federal Civil Rule of Procedure 41(a)(1).

30. In connection with the "new" evaluation of Chant's proposal by the evaluation team, on February 6 CCAD sent Chant a list of Fourteen (14) items for which CCAD wanted clarification. AR 461 – 463

31. The fourteen (14) questions were as follows:

> 1) C2.4 Describe how Chant is going to be compatible with existing General Purpose test fixtures & ATP's.
>
> 2) C3.1 Describe how Chant is going to achieve the 85 Db's noise level at the operators (sic) work station.
>
> 3) C4.2e – Has Chant designed and built Test Equipment with a Universal Source: Drive Current +/- 20 mA DC single Channel (programmable), and a DC Power Supply: Voltage 0 to 40 VDC @ 20 AMPs and a LVDT Power Supply: Dual Channel 400 Hz 26 VAC all in a single test system that is automated and controlled by the application software.

4) C4.3 Describe how the Test System shall be supplied with three (3) hydraulic circuits that are functionally and physical isolated from the other circuits that are operated independently.

5) C4.3.1.2 Describe how Chant's Test System will use the existing Government supplied master reference standard during calibration.

6) C4.6.1.C Describe how Chant will address the interface computer communications with distributed control components, e.g. controllers, and System 10.

7) C4.6.5 – Has Chant met the DOD Information Technology Security Certification and Accreditation Process (DITSCAP) in accordance with AR 25-1 in previous computer automated test equipment design/manufacturing?

8) C4.6 Describe how Chant's computer will be capable of supporting existing calibration equipment.

9) C4.6.3.3 Describe how Chant's application software shall conform to and interface with the existing software in the general purpose hydraulic test system presently installed at CCAD.

10) C4.6.3.3 Describe how Chant will automatically archive backup copies of the system 10 configuration.

11) C5.0 Has Chant designed and built test system's (sic) that are computer automated, testing servo-actuators, using a pre-existing customer provide (sic), automated test procedure?

12) C5.0 Has Chant designed and built test system's (sic) that performed operator hands-offs automated testing of aircraft electro-hydraulic components that uses (sic) computerized data acquisition and control techniques in which the pressure and flows are controlled by purely by (sic) the automated test procedure. If yes, please provide specific examples of the test product.

13) C6.0 Has Chant designed and built Remote Hydraulic Power Supplies that produce 500-6000 psig, up to 90 gallons per minute with an adjustable temperature from 100ºF to 160ºF in which one power supply supports two (2) each General Purpose Test systems?

14) C6.0 How is Chant going to interface with the existing Hydraulic Power Supply?

AR 462 – AR 463.

32. On February 10, 2006 Chant submitted its response to CCAD's February 6 letter. AR 458 – AR 460.

33. Subsequently, Chant received a letter from CCAD dated March 24. AR 453

34. CCAD's letter stated that Chant's response to its request for clarification "indicated no experience in DITSCAP," and that the "responses to all other questions [excepting 2,4,10 and 13] were, too general in nature with no specific details pertaining to the question;" the letter further stated that Chant's response "did not sufficiently explain or address such issues as automated test procedures, dealing with proprietary information, or test procedures performed or components tested." AR 453

35. CCAD's letter concluded by saying that the reevaluation of Chant's offer was, "considered complete," and that, "[n]o further questions are forthcoming nor will any further information be accepted." AR 453

36. The reevaluation to which the Contracting Officer referred is her March 24 letter was done by a team of three members, one of whom was Carrow (*i.e.*, the individual who performed the original evaluation. See AR 454.

37. For the nine (9) questions that, according to the team, Chant's had not provided satisfactory answers, *i.e.*, Nos. 1,3,5,6,8,9,11,12 and 14 (plus No. 7, DITSCAP), the evaluators wrote:

* * *

> 1. Chant did not answer the question. Gave generalities and no specific details pertaining to the question.

* * *

> 3. Did not answer all the question. No mention of it being automated and controlled by the application software (i.e. 488 bus used).

* * *

> 5. Chant did not ask for details or data on the Master Reference Standard during the question/answer period that followed he site visit making it difficult for them to answer this question at this time. Gave generalities and no specific details pertaining to the question.
>
> * * *
>
> 6. Chant's answer was very weak.
>
> * * *
>
> 8. Chant did not ask for details or data on the calibration equipment during the question/answer period that followed the site visit making it difficult for them to answer this question at this time. Gave generalities and no specific details pertaining to the question. Committee feels Chant did not elaborate on how it was going to deal with proprietary information.
>
> * * *
>
> 9. Chant gave generalities and no specific details pertaining to the question. Nothing mentioned in their answer about "existing software".
>
> * * *
>
> 11. Did not answer. Chant gave generalities and no specific details pertaining to the question. Nothing mentioned in their answer about "testing servo-actuators" or "automated test procedures".
>
> * * *
>
> 12. Did not answer. Chant gave generalities and no specific details pertaining to the question. Nothing mentioned in their answer about examples of the test procedure, DMWR'/TM used, components tested.
>
> * * *
>
> 14. Did not answer. Committee feels Chant did not elaborate on how it was going to deal with proprietary information.

AR 455 - AR 457.

38. With respect to Question No. 7 ("*C4.6.5 – Has Chant met the DOD* Information Technology Security Certification and Accreditation Process (DITSCAP) in accordance with AR 25-1 in previous automated t*est* equipment project design/manufacturing*?")*, the conclusion of the in review of Chant's response was, "Chant states they have no experience with

DITSCAP." AR 456.

39. The conclusions of the new evaluation team, upon review of Chant's responses were as follows:

> OVERALL ALL (sic) EVALUATION OF PORPOSAL
>
> Section 4 of Chants proposal "Response to Specification" is the CCAD statement work removing "Contractor" with "Chant". Even doing this, Chant is not 100% compliant with the statement of work.
>
> Chant gave generalities and no specific details pertaining to the questions that were forwarded to them pertaining to their proposal. The committee wanted specific's on how Chant was going to address these issues. They did not do a good job in convincing the committee they are qualified in supplying the test equipment.
>
> Chant did not ask for details or data pertaining to equipment mention (sic) in the SOW during the question/answer period that followed the site visit making it difficult for them to answer some questions at this time. Chant proposal states the need for a post award site visit to discuss compatibility and design issues and are offering CCAD a test system design with serial number 0001. The SOW is asking for a off the shelf proven design.
>
> The committee feels Chant did not elaborate on how it was going to deal with proprietary information pertaining to existing software, test equipment, and calibration equipment.
>
> Statement of work paragraph C2.4: Chant failed to state how they are going to comply with compatibility issues. Stated on page 2 of their proposal they "will visit the site after award for the purpose of examining compatibility issues", (sic). a sign they do not fully understand the project. Existing equipment it must be compatible with, ATP's, ect. (sic), are proprietary.
>
> Statement of work paragraph C3.1: Section 2.1 of proposal (page 3) describes manual controls for supply/ return pressure and static test pressure. CCAD is asking for a fully automated test system. The existing ATP for OH-58 actuators requires the test system to control all pressures & flows?
>
> The committee feels Chant did not meet the minimum requirements of the SOW.

AR 457.

40. Chant then filed the instant action.

Respectfully submitted,

/s/ Marc Lamer

MARC LAMER
Attorney for Plaintiff

May 5, 2006