**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | | |
|---|---|---|
| CHANT ENGINEERING CO., INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-282C |
| THE UNITED STATES, | ) | (Judge Horn) |
| Defendant, | ) | |
| and | ) | |
| DAYTON T. BROWN, | ) | |
| Intervenor. | ) | |

DEFENDANT'S REPLY BRIEF

Pursuant to the Court's June 15, 2006 order, defendant, the United States, respectfully submits the following reply brief in support of its motion for judgment upon the administrative record. In its supplemental brief, Chant argues that (1) Dayton T, Brown, Inc.'s ("DTBI") proposed test stands are not commercial, off-the-shelf items; (2) its test stands are compatible with the Corpus Christi Army Depot's ("CCAD") existing test system without utilizing DTBI's proprietary software, and (3) it has standing to bring this bid protest. For the reasons set forth below and in our previous filings in this case, Chant's motion for judgment on the administrative record should be denied and the Government's motion granted.

DISCUSSION

I. CCAD Did Not Act Arbitrarily, Capriciously, Or Contrary To The Law Or Abuse Its Discretion By Finding That DTBI's Proposed Test Stands Met The Solicitation Requirement For A Commercial, Off-The-Shelf Item

CCAD's decision to award the contract to DTBI must be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706; see also 28 U.S.C. § 1491(b)(4) ("[i]n any action under this section, the courts shall review the agency's decision pursuant to the standards set forth in Section 706 of Title 5"). "Contracting officers are given broad discretion in their evaluation of bids." R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003). "In particular, technical ranking decisions made by the agency are 'minutiae of the procurement process . . . which involve discretionary determinations of procurement officials that a court will not second guess.'" Blue & Gold Fleet, LP v. United States, 70 Fed. Cl. 487, 493 (1996) (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)). "[W]hen a [contracting officer's] decision is reasonable a court may not substitute its judgment for that of the agency." R & W Flammann, 339 F.3d at 1322; see also Blue & Gold, 70 Fed. Cl. at 493 ("The court must not substitute its judgment for that of the agency, but, instead, should defer to the agency's analysis so long as it has a substantial basis in fact.").

The Court's review of CCAD's decision to award the contract to DTBI should be based upon an examination of the materials that were developed and considered by the agency in making its decision. Aero Corp. v. United States, 38 Fed. Cl. 408, 410 (1997). Accordingly, in bid protests, courts generally confine themselves to the administrative record developed by the agency. Murakami v. United States, 46 Fed. Cl. 731, 734 (2000); Rust Constructors Inc. v. United States, 49 Fed. Cl. 490, 496 (2001). The administrative record consists of the materials and files that were before the agency at the time the agency's decision was made. Dismas Charities, Inc. v. United States, 61 Fed. Cl. 191, 198-99 (2004).

In its brief, Chant argues that a review of DTBI's website and marketing materials show that DTBI's Model LE6000R test stand is different from the test stands that are currently being

used by CCAD. Pl. Supp. Br. 1-5. According to Chant, the differences between the two include a difference in the clear guard cover, a difference in the height of the cabinet, and a difference in the arrangement of gauges and valves. Id. at 3. Chant argues that DTBI's proposal offered the test stands that are currently being used by CCAD, and because there is a difference between the existing test stands and Model LE6000R, which is advertised on DTBI's website and in its marketing materials, DTBI's proposed test stand has not been offered to the general public and, therefore, is not a commercial, off-the-shelf item. Id. at 4-5. Moreover, Chant argues that, even if DTBI's proposal offered Model LE6000R, DTBI's website shows that Model LE6000R has a maximum flow rating of 60 gallons per minute ("GPM") for circuit 1 and the solicitation required that the test stand have a maximum flow rating of 85 GPM. Thus, Chant argues, Model LE6000R does not meet the requirements of the solicitation. Id. at 3-4.

First, the differences in the clear guard cover, height of the cabinets, and arrangement of the gauges and valves are all aesthetic differences. Under Chant's rationale, two Model LE6000R test stands would be different if they were simply painted a different color. Second, DTBI's proposal offered a "Model LE6000R General Purpose Test Stand," with a "Circuit No. 1 - Return line .9 to 85 GMP." AR 378, Section 3.1.1. DTBI's proposal also represented that "Model LE6000R and CP/S-6250 Test Systems have been in full operation supporting CCAD to meet its mission goals since 1996." AR 374. Model LE6000R is the test stand that is offered for sale to the general public on DTBI's website and in its marketing materials. Pl. Supp. Br. 2. Moreover, the 85 GMP satisfies the solicitation's specification. AR 47, Section C.4.2. That DTBI's marketing materials show a Model LE6000R test stand with aesthetic differences from the test stands that were purchased by CCAD almost ten years ago and with a different flow rate

is not relevant to the Court's analysis because the marketing materials and DTBI's website were not materials before or considered by the agency in making its decision. See Aero Corp., 38 Fed. Cl. at 410. Thus, they are not part of the administrative record in this case. See Dismas Charities, 61 Fed. Cl. at 198-99. DTBI's proposal was considered by the agency, and that proposal represented that DTBI was offering its Model LE6000R test stand, with a maximum flow rating of 85 GMP, and which was already being used by CCAD. AR 374, 378. Accordingly, the agency did not act arbitrarily, capriciously, or contrary to the law or abuse its discretion in determining that DTBI's proposal met the specification requirements and should be awarded the contract.

## II. Chant's Proposal Was Deficient Because It Failed To Explain How Its Test Stands Would Be Compatible With CCAD's Existing System

In its evaluation and re-evaluation, the agency found Chant's proposal deficient for failing to explain how its test stands would be compatible with CCAD's existing test system. See AR 46, Section C.2.4. ("Provide complete compatibility with existing CCAD general purpose test fixtures, automated test procedures and with existing local area test system network."); see also AR 266, 272, 457. In its supplemental brief, Chant delves into a detailed explanation regarding how its software and test stands could interact with CCAD's existing test system without a license to use DTBI's proprietary software. Pl. Supp. Br. 5-7. Indeed, Chant alleges that DTBI's software is not proprietary at all but is based upon a software system that may be used and configured by anyone. Id. However, Chant does not cite to its proposal or any other document in the administrative record to explain the compatibility of its software and test stands with CCAD's existing system. Rather, Chant must rely upon a declaration by Mr. L. James Chant that

was filed with its supplemental briefing. Id. Chant cannot cite to its proposal or the administrative record because, as the agency correctly concluded, Chant failed to explain in its proposal, or even in its answers to the re-evaluation questions, how its test stand and software would be compatible with the agency's existing test system. It is of no relevance that Chant can now explain, in its supplemental brief in this bid protest, how its test stands may be compatible after the contract has already been awarded.. See Dismas Charities, 61 Fed. Cl. at 198-99 (finding that the administrative record should not include materials created or obtained subsequent to the time the agency decided to take the challenged action because such materials could not have been considered by the agency in making its decision). Neither Chant's supplemental brief nor Mr. L. James Chant's declaration was before the agency or considered by the agency in making its decision. Therefore, it cannot be considered by the Court in determining whether the agency's decision should be upheld. Id.

Chant may argue that, until this protest, it was unaware how DTBI's software was configured. However, the purpose of the site visit, which Chant clearly attended and took pictures at, was for potential bidders like Chant to ask questions and discover information regarding the workings of the agency's existing test system. AR 46, Section C.2.1; Pl. Supp. Br. 3. The administrative record reflects that Chant never submitted a question to the agency regarding the configuration and set-up of the software currently operating the existing test system.

Accordingly, even assuming Chant's assertions regarding compatibility and DTBI's software are true, the agency did not act arbitrarily, capriciously, or contrary to the law or abuse

its discretion in finding that Chant's proposal was deficient because it failed to explain compatibility issues with the agency's existing test system.

## III. Chant Lacks Standing To Bring This Bid Protest Because It Cannot Show That It Was Prejudiced By The Alleged Errors Or That It Had A Substantial Chance Of Receiving The Contract

To establish standing, Chant must show that it had a substantial chance of receiving the contract absent the alleged errors in the procurement. Myers Investigative & Sec. Serv., Inc. v. United States, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002). A protester is not an interested party and, therefore, lacks standing to protest where it was incapable of receiving the award at issue or its bid is otherwise nonresponsive. See United States v. IBM Corp., 892 F.2d 1006, 1012 (Fed. Cir. 1989); CHE Consulting, Inc. v. United States, 47 Fed. Cl. 331, 337 (2000). Further, "because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." Information Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

In its supplemental brief, Chant argues that it has standing to bring this protest because neither its proposed test stand nor DTBI's proposed test stand are commercial, off-the-shelf products. Pl. Supp. Br. 7-10. Chant claims that it is seeks to have the Government re-bid the contract without the requirement that the test stands be "normally stocked, standard off the shelf packages." Id. at 8. According to Chant, if this requirement is eliminated, Chant would be able to submit a compliant offer and, therefore, has standing to bring this bid protest. Id. at 8-9.

First, if the Government wants to purchase a commercial, off-the-shelf test stand, the Government has the right to buy a commercial, off-the-shelf test stand. Although the Court may order the Government to re-bid the contract in this case, it does not possess the authority to force

the Government to purchase a product that it does not want by adding and removing specifications in the solicitation. Cascade Pacific Int'l v. United States, 773 F.2d 287, 291 (Fed. Cir. 1985) (Government "is entitled to receive that for which it contracted and has the right to accept only goods that conform to the specification."); see also Farwell Co. v. United States, 137 Ct. Cl. 832, 836, 148 F. Supp. 947, 949 (1957) (finding that the Government has a right to insist upon the contractor's compliance with the specifications regardless of its reasons).

Second, as explained above, DTBI's proposal offered a commercial, off-the-shelf test stand. Moreover, even if DTBI did not offer a commercial, off-the-shelf test stand or if the specification for a commercial, off-the-shelf test stand were removed, Chant still would not have standing to bring this protest. Chant's proposal was deficient in at least two major technical requirements. It did not offer a commercial, off-the-shelf product, and it did not show that its proposed test stands were compatible with the agency's existing test system. AR 457. Therefore, because Chant did not show in its proposal that its proposed test stands could work with the agency's existing test system, it had no substantial chance of receiving the contract absent its alleged errors. Accordingly, Chant is not an interested party and lacks standing to bring this action. Myers, 275 F.3d at 1369-70.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's motion for judgment upon the administrative record and for a permanent injunction and, further, grant our cross-motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

ALEX LOPEZ
Corpus Christi Army Depot
Legal Office
308 Crecy Street
Corpus Christi, TX 78419

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-1011
Fax. (202) 514-7965

Dated: July 7, 2006

Attorneys for Defendant