# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
# (BID PROTEST)

| | | |
|---|---|---|
| CHANT ENGINEERING CO., INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 06-282C |
| THE UNITED STATES, | ) | |
| | ) | (Judge Horn) |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAYTON T. BROWN, | ) | |
| | ) | |
| Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL DECLARATION

Pursuant to the Court's August 2, 2006 order, defendant, the United States, respectfully submits the following response to plaintiff, Chant Engineering Company, Inc.'s ("Chant") supplemental declaration.

## DISCUSSION

In its motion for leave to file a supplemental declaration, and in the supplemental declaration itself, Chant argues that the test stand offered to the Government by the intervenor, Dayton T. Brown, Inc. ("DTBI"), is not the same test stand that is advertised for sale to the general public on DTBI's website. Pl. Mot. 1.[1] Specifically, Chant claims that (1) the 60 gallons per minute ("gpm") maximum flow rate advertised on DTBI's website for the model LE6000R test stand was not a mistake; (2) the model LE6000R test stand advertised on DTBI's marketing materials has a national stock number, and, therefore, is not a commercially available product;

[1] Plaintiff's motion for leave to submit a supplemental declaration, filed on July 12, 2006, will be cited as "Pl. Mot." followed by the specific page reference.

and (3) DTBI's test stand is not off-the-shelf because it proposes a year-long design and build effort. Pl. Mot. 2. Each of these arguments are without merit.

First, in its supplemental reply brief, DTBI submitted the declaration of its Engineering Manager-Test Systems, Christopher C. Alfano. DTBI Reply Br. 10.[2] Mr. Alfano declared that the 60 gpm maximum flow rate advertised on the company's website was a mistake, and that this mistake has since been corrected. Id. at 11. According to Mr. Alfano, the 90 gpm maximum flow rate advertised in the brochure for the model LE6000R test stand is correct. Id. 11-12. Although Chant argues that this representation is not true, it offers no supports for its assertion, other than to claim that any mistake occurring at a company of DTBI's size and experience is unlikely. Pl. Mot. 3-4. However, the evidence in the case supports DTBI's explanation that the 60 gpm maximum flow rate was a mistake. For example, the brochure for the model LE6000R test stand advertises a maximum flow rate of 90 gpm; DTBI's proposal offered the model LE6000R and represented that it met the 85 gpm maximum flow rate required in the specification; Mr. Alfano, DTBI's engineering manager for test systems, declared under oath that the maximum flow rate for the model LE6000R is 90 gpm; Mr. Alfano declared under oath that the 60 gpm advertised on the website was a mistake; and the 60 gpm flow rate has since been changed on DTBI's website. See DTBI Reply Br. 10-12; AR 378; see also a current excerpt from DTBI's website, attached hereto as Exhibit 1. All of these facts support DTBI's representation that the test stand offered for sale on its website is the same test stand offered in its proposal, with a maximum flow rate of 90 gpm.

[2] DTBI's supplemental reply brief, filed on July 10, 2006, will be cited as "DTBI Reply Br." followed by the specific page reference.

Moreover, whether the advertised 60 gpm was a mistake is irrelevant to the issues in this case. The Court's review of the agency's decision to award the contract to DTBI should be based upon an examination of the materials that were developed and considered by the agency in making its decision. Aero Corp. v. United States, 38 Fed. Cl. 408, 410 (1997). That DTBI's website showed a different maximum flow rate for the model LE6000R test stand is not relevant to the Court's analysis because DTBI's website was not before or considered by the agency in making its decision. See Aero Corp., 38 Fed. Cl. at 410. DTBI's proposal was considered by the agency, and that proposal represented that DTBI was offering its model LE6000R test stand, with a maximum flow rate meeting the specification's requirement of 85 gpm. AR 374, 378. Accordingly, the agency did not act arbitrarily, capriciously, or contrary to the law or abuse its discretion in determining that DTBI's proposal met the specification requirements and should be awarded the contract.

Second, the fact that the model LE6000R test stand has a national stock number is not evidence that the test stand advertised on the website is different from the test stand advertised in the brochure. It is also not evidence that the test stand is not a commercially available product sold or offered for sale to the general public. The national stock number is merely a number assigned to products that are repeatedly purchased by the Government. See 41 C.F.R. § 101-30.000 (providing a Federal Catalog System by which items of supply are "uniformly named, described, classified, and assigned national stock numbers to aid in managing all logistical functions and operations from determination of requirements through disposal"); 41 C.F.R. § 101-30.101-3 ("The 'national stock number' (NSN) is the identifying number assigned to each item of supply."); see also Pl. Supp. Br. 23 ("A National Stock Number is simply an official label

applied to an item that is repeatedly bought, stocked, stored, issued, and used throughout the federal supply system.").[3] It does not mean that such products are prohibited from being sold or offered for sale to the general public.

Finally, in his supplemental declaration, Mr. Chant argues that DTBI's test stand is not an "off-the-shelf" commercial item because DTBI needs a year to build and design it. Pl. Mot. 4. However, this argument lacks merit because all that is required for an "off-the-shelf" commercial item is that the item has been sold or offered for sale to the general public. The item does not have to be currently ready and available for public sale. See FAR § 2.101; see also Chant Engineering Co, Inc., B-281521, 99-1 CPD ¶ 45 (Feb. 22, 1999) (finding that protestor was not offering "commercial off the shelf equipment" because there was no indication in the proposal that these items were ever commercially available).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's motion for judgment upon the administrative record and for a permanent injunction and, further, grant our cross-motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

[3] Plaintiff's supplemental brief, filed on June 30, 2006, will be cited as "Pl. Supp. Br." follwed by the specific page reference.

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

ALEX LOPEZ
Corpus Christi Army Depot
Legal Office
308 Crecy Street
Corpus Christi, TX 78419

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 307-1011
Fax. (202) 514-7965

Dated: August 16, 2006

Attorneys for Defendant